**Ralph E. LINDSEY, Plaintiff-Appellee,**

v.

**UNITED STATES GOVERNMENT, et al., Defendants-Appellants.**

**Ralph E. LINDSEY, Plaintiff-Appellee,**

v.

**UNITED STATES of America, et al., Defendants-Appellants.**

**No. 84–2403.**

United States Court of Appeals, Fifth Circuit.

Dec. 26, 1985.

Bob Wortham, U.S. Atty., Steven M. Mason, Asst. U.S. Atty., Tyler, Tex., Marion L. Jetton, Dept. of Justice, Antitrust Div., John J. Powers, III, Steve MacIsaac, Atty., Washington, D.C., for defendants-appellants.

Ralph E. Lindsey, pro se.

Before CLARK, Chief Judge, and BROWN, and GEE, Circuit Judges.

CLARK, Chief Judge.

The United States appeals a judgment of the United States District Court for the Eastern District of Texas in favor of the plaintiff, Ralph E. Lindsey, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.* We reverse.

In November 1975 Lindsey submitted to the Patent and Trademark office a *pro se* application for a patent on an "electromagnetic reciprocating engine." The application implied that this engine was capable of producing a greater electric charge than it consumed. This application was assigned

to patent examiner Duggan. Several weeks later, Lindsey filed a second *pro se* application claiming an additional use for the device. The second application was assigned to patent examiner Ostrager.

On April 27, 1976, Duggan rejected Lindsey's first application on the grounds of insufficient disclosure, 35 U.S.C. § 112, and anticipation by prior inventions, 35 U.S.C. § 103. Lindsey did not respond to the rejection but filed a third application. This third application, filed with the advice of counsel, reiterated the original two claims and asserted an additional claim that the magnetic energy dissipated while the engine was running could be recovered and returned to a battery.

On March 5, 1976, an independent party, Oliver Davis, had filed an application for a device similar to the machine described in Lindsey's third application in that it contained a current recovery claim. A patent for Davis' invention was issued on April 19, 1977.

On October 20, 1976, Ostrager rejected Lindsey's second application on the grounds of insufficient disclosure. On June 13, 1977, Duggan rejected Lindsey's third application again based on insufficient disclosure and prior art, citing the Davis patent. Lindsey then filed an amendment to his third application seeking to distinguish his application from Davis'. He also filed affidavits to try to establish that he had conceived or reduced the invention to practice before Davis filed his application. On March 3, 1978, Duggan rejected Lindsey's amended application solely on insufficient disclosure grounds.

Lindsey filed a *pro se* administrative appeal with the Board of Patent Appeals. The Board affirmed the Patent and Trademark Office decision and basis. Lindsey was authorized to seek judicial review of the Board's ruling in the District Court of the District of Columbia or in the Court of Customs and Patent Appeals. Instead, he brought an administrative claim in the Commerce Department under the Federal Tort Claims Act seeking $5 million in compensation for the Patent and Trademark Office's "gross negligence." The claim was denied by the Commerce Department.

Lindsey then initiated the present action against the United States and several officials of the Patent and Trademark Office. He claimed that patent examiner Duggan negligently failed to properly consider Lindsey's patent applications and negligently failed to declare an "interference" after Davis' patent application was filed. The government moved for dismissal on the grounds that Duggan's actions were protected as discretionary under the discretionary function exception to the Federal Torts Claim Act. 28 U.S.C. § 2680(a). The district court dismissed the individual defendants but denied the motion as to the government because it viewed the exception as applicable only where "choices or determinations in the agency decisionmaking process call for the balancing of policy considerations or the making of policy judgments." The court conceded that "the decisions at issue in this suit may have involved a measure of scientific determination or expertise ..." but ... "they did not involve policy considerations."

At trial the court found the United States liable because the Patent and Trademark Office breached its duty of due care to Lindsey by rejecting his application for the wrong reasons. The court did not assess damages, however, because it found that Lindsey had failed to establish any monetary damages resulting from the denial of his application. The court did award Lindsey costs. The United States appeals.

The Federal Tort Claims Act waives sovereign immunity to the extent of permitting a cause of action against the United States for "injury or loss of property ... caused by the negligent or wrongful act or omission" of a government employee acting within the scope of his employment, if a private person would be liable under the same circumstances. 28 U.S.C. § 1346(b). There are, however, limitations within the Act to this broad waiver of immunity.

Legislative history indicates that Congress did not intend for the government to be exposed to liability arising from official

acts. *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), *citing* H.R.Rep. No. 2800, 71st Cong., 1st Sess., p. 13. Two clauses describe the exempted acts of government employees which might otherwise be covered by the Federal Tort Claims Act, 28 U.S.C. § 2680. The first bars any tort action challenge to the legality of statutes and regulations. The second, which is the relevant provision in this instance, states that the waiver of sovereign immunity does not apply *to* claims which arise from a government employee's performance of "a discretionary function or duty." 28 U.S.C. § 2680(a).

This discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Congress' purpose in creating the exception was delineated in legislative history surrounding the Act:

> [It is] designed to preclude application of the act to a claim based upon an alleged abuse of discretionary authority by a regulatory or licensing agency ... It is neither desirable nor intended that the ... propriety of a discretionary administrative act should be tested through the medium of a damage suit for tort. *Id.* 104 S.Ct. at 2763.[1]

The Supreme Court first interpreted the discretionary function exception in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The Court, finding it unnecessary to define discretion beyond the confines of the case, simply stated that, "[w]here there is room for policy judgment and decision, there is discretion." *Id.* at 36, 73 S.Ct. at 968. The Court further distinguished the term as used in this context from the discretion of a judge who has the "power to decide within the limits of positive rules of law ..." *Id.* at 34, 73

S.Ct. at 967. Instead it is "the discretion of the executive or the administrator to act according to one's judgment of the best course." *Id.* at 34, 73 S.Ct. at 967. This is not to say that the exception only exempts executives or administrators. The court went on to state that "[i]t necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *Id.* at 36, 73 S.Ct. at 968. Otherwise the exception would be largely meaningless because most such actions are executed by subordinates acting at the direction of their superiors.

The Court elaborated on its construction of the scope of the discretionary function exception in *Varig Airlines, supra.* In affirming *Dalehite's* view that the status of the actor is not determinative, the Court delineated factors conducive to understanding when an action is protected by § 2680(a). "The basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a government employee ... are of the nature and quality that Congress intended to shield from tort liability." *Varig Airlines,* 104 S.Ct. at 2765. The court further noted that "... [the exception] plainly was intended to encompass the discretionary acts of the government acting in its role as a regulator of the conduct of private individuals." *Id.*

In this action, Lindsey alleged improper consideration of his patent application and the improper failure to grant an interference. We must consider this alleged misconduct in the context of the statutory authorization for the employee's decisions.

U.S. Const. art. 1, § 8, Cl. 8 empowers Congress to "promote the Progress of ... useful Arts, by securing for limited Times to ... Inventors the exclusive Right to their ... Discoveries." Congress has delegated this duty to the Patent and Trademark Office. In 35 U.S.C. § 111 *et seq.,* Congress has prescribed the application procedure for securing a patent. Section

---

1. Citing Hearings on H.R. 5373 and H.R. 6463 before the House Committee on the Judiciary, 77th Cong. 2d Sess., 28, 33 (1942) (statement of Assistant Attorney General Francis M. Shea).

112 requires that the application describe the invention and, among other things, the manner and process of making and using the information. This information is necessary for the evaluation of whether the invention is patentable pursuant to the conditions in 35 U.S.C. § 101 *et seq.* Whether to deny an application on the grounds of insufficient disclosure is a decision committed to a subordinate's judgment. That decision necessarily involves determining whether the information provided is sufficient to warrant the issuance of an economic monopoly over the invention. As such, it is a decision that surely depends on weighing considerations of social, economic, and political policy. We therefore find that the denial of the application for insufficient disclosure was conduct that comes within § 2680(a). Because the decision not to declare an interference after Davis' application was filed involves similar assessments, we conclude that § 2680(a) applies to that alleged misconduct as well.

Sovereign immunity precludes tort actions against the United States which come within the ambit of the discretionary function exception to the Federal Tort Claims Act. The conduct of examiner Duggan and the Patent and Trademark Office are well within that sphere. Accordingly, the judgment appealed from is

REVERSED.